798 F.2d 468
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
A & B FOOD SERVICES CORPORATION, M.C. Management Corporation
# 7 M.C. Management Corporation # 8 AB Management
Corporation # 8, Plaintiffs-Appellees,
v.
JUDY'S FOODS INC.; General Care Corporation; Marvin
Friedman; and Joel Gordon, Defendants-Appellants.
 No. 85-5527.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1986.
 
 Before KRUPANSKY and GUY, Circuit Judges, and HOLSCHUH, District Judge*.
 PER CURIAM.
 
 
 1
 Defendants/appellants Judy's Foods Inc., General Care Corporation, Marvin Friedman and Joel Gordon (collectively referred to as "defendants") appealed the jury verdict and denial of their motion for judgment notwithstanding the verdict in this diversity action.
 
 
 2
 In 1976, General Care Corporation, a Tennessee corporation, formed Judy's Foods, Inc. ("Judy's") for the purpose of owning, operating and franchising limited menu fast food restaurants under the name "Judy's Homestyle Hamburgers and Fixins." The individual defendants, Marvin Friedman and Joel Gordon, were officers, directors, and members of the Executive Committee of both Judy's and General Care Corporation.
 
 
 3
 Judy's solicited Agostine Malerba ("Malerba"), to become its franchisee in the greater Philadelphia area. In May, 1978, Malerba, relying upon the representations of Judy's, executed an agreement with Judy's, which granted to Malerba an option to franchise a total of fifteen Judy's restaurants in the geographical area of Philadelphia. Malerba assigned one-half of his interest in the franchisee agreements to his business partner, Buddy Cooperberg ("Cooperberg") and they in turn formed the three plaintiff corporations, A & B Food Services Corporation, M.C. Management Corporation # 4 and M.C. Management Corporation # 7 to construct and operate two Judy's franchises in Philadelphia. Malerba and Cooperberg were the sole stockholders of the corporate plaintiffs, and their franchise rights were assigned to the corporations. Plaintiff's completed the construction of two Judy's restaurants which commenced business operations during February and June of 1979. Both restaurants proved to be unprofitable and were closed in December of 1979 and October of 1980 respectively.
 
 
 4
 Thereafter, plaintiffs initiated this action in the federal district court charging the defendants with fraud, negligent misrepresentation, intentional failure to disclose vital business information, conspiracy, and breach of contract which caused substantial injury to the plaintiffs. At the conclusion of a three and one-half week trial, the jury returned a verdict in favor of plaintiffs, having concluded that defendants had failed to disclose critical business information to the plaintiffs and had committed fraudulent concealment and constructive fraud. Defendants timely moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied the motions and this appeal ensued.
 
 
 5
 Defendants' first assignment of error charged that the district court's submission of the issue of constructive fraud to the jury was improper. Defendants argued that an action for constructive fraud could be maintained only upon proof of a confidential relationship between plaintiff and defendant and that, as a matter of law, the facts of the case did not give rise to such a relationship. This assignment of error is disposed of by Edwards v. Travelers Insurance Company of Hartford, Connecticut, 563 F.2d 105, 114 (6th Cir.1977) wherein this circuit reviewed the Tennessee law on constructive fraud and observed:
 
 
 6
 A definition of constructive fraud was given in Maxwell v. Land Developers, Inc., 485 S.W.2d 869, 875 (Tenn.App.), cert. denied, (1972).
 
 
 7
 "Constructive frauds are acts, statements or omissions, which operate as virtual frauds on individuals, or which, if generally permitted, would be prejudicial to the public welfare, and are not clearly resolvable into mere accident or mistake, and yet may have been unconnected with any selfish evil design, or may amount, in the opinion of the person chargeable therewith, to nothing more than what is justifiable or allowable." Gibson's Suits in Chancery 5th Ed. Vol. II, Sec. 982, p. 217. Constructive fraud may be established where there is a breach of legal or equitable duty, whether or not fraudulent intent be present. Bank of Blount County v. Dunn, (1929) 10 Tenn.App. 95.
 
 
 8
 Failure to disclose thus becomes fraudulent when it is the duty of a party having the knowledge to reveal the facts to the other party. Domestic Serving Machine v. Jackson, 83 Tenn. 418, 424-25 (1885); Dozier v. Hawthorne Development Co., supra, 37 Tenn.App. 279, 262 S.W.2d 705; Georgia Marble Co. v. Standard Tile Co., supra, 19 Tenn.App. 258, 86 S.W.2d at 432.
 
 
 9
 The Edwards court went on to conclude that the "duty" to disclose known facts arises when there exists a "confidential relationship", which the court defined as:
 
 
 10
 one in which "confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of the confidence, to influence and exercise dominion over the weaker or dominated party." Iacometti v. Frassinelli, 494 S.W.2d 496, 499 (Tenn.App.), cert. denied (Tenn.1973).
 
 
 11
 In light of this circuit's pronouncements in Edwards v. Travelers Insurance Co. of Hartford, Connecticut, this court concludes that the trial court properly submitted the issue of the defendant's duty to disclose material business information to the plaintiff franchisees to the jury for disposition. Moreover, a review of the record disclosed that sufficient probative evidence supported the jury's decision that a relationship of confidence existed between the parties that required Judy's to disclose material facts that impacted upon the current and future viability of its entire franchising and business operations and the interrelated business operations of its individual franchisees which Judy's intentionally failed to do.
 
 
 12
 Defendants also asserted that the district court's refusal to grant a remittitur to reduce the jury's award of punitive damages was error because the award was excessive and disproportionate to the injuries suffered by the plaintiff. It should initially be noted that this circuit has long adhered to the view that where, as here, a damage award has been determined by the jury and left undisturbed by the trial court, the award bears a presumption of correctness. As this court noted in Manning v. Altec, Inc., 488 F.2d 127 (6th Cir.1973):
 
 
 13
 Where the jury finds a particular quantum of damages and the trial court refuses to disturb its findings on the motion for a new trial, the two factors press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial.
 
 
 14
 488 F.2d at 133 (quoting Taylor v. Washington Terminal Company, 409 F.2d 145, 148 (D.C.Cir.) cert. denied, 396 U.S. 835 (1969) ). See also Cathey v. Johns-Manville Sales Corp., 776 F.2d 1565, 1572 (6th Cir.1985).
 
 
 15
 Moreover, while defendants argued that plaintiffs failed to prove a reasonable relationship between the punitive damages and actual injury, Tennessee has never adopted the reasonable relationship test. Instead, Tennessee courts have ruled that punitive damages "are allowed as punishment of the wrongdoer and are not based so much upon the nature and extent of the injury as they are upon the oppression of the party who does the injury." Lazenby v. Universal Underwriters Insurance Co., 214 Tenn. 639, 642, 383 S.W.2d 1, 4 (1964); Johnson v. Husky Industries, Inc., 536 F.2d 645, 650 (6th Cir.1976); Cathey v. Johns-Manville, supra.
 
 
 16
 Viewing the evidence under the aforementioned standards, this court is constrained to conclude that the punitive damage awards were not "contrary to all reason." Manning v. Altec, Inc., supra. The Tennessee Supreme Court has recently directed that in assessing the reasonableness of awarded punitive damage consideration should be given to the egregiousness of a defendant's acts and the financial worth of the defendant. "The more reprehensible the act, the greater the award of punitive damages," Coppinger Color Lab, Inc. v. Nixon, 698 S.W.2d 72, 75 (Tenn.1985). Defendants' acts in the instant case were certainly egregious and the punitive damages award, when viewed against defendants' aggregate net worth of over thirty seven million dollars, was not excessive.
 
 
 17
 This court having reviewed the defendants remaining assignments of error concludes that they are not well taken. For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 Hon. John D. Holschuh, United States District Judge, Southern District of Ohio, sitting by designation